23-25. Counselor Bradley, you have reserved three minutes of your time for rebuttal, correct? Yes, Your Honor. Okay. We're ready when you are. May it please the Court. The district court erred in its constructions of two sets of claim terms. In both instances, the district court relied on the prosecution history of a family member to impart new restrictions on the claim terms here at issue. The court's approach was wrong. The court misapplied this court's law on when prosecution histories of family members can be relevant and the district court misapplied this court's law on when and what types of statements can give rise to a disclaimer or disavowal of claims code. The first term I want to talk about this morning is the phrase guide mechanism comprising a lumen. In the parent, the grandparent, file history that the district court relied on. Can I ask you this question? Is a lumen something other than the pure space that is open between a starting point and an end point? Absolutely, Your Honor. Yes, it is. It is a dedicated lumen. It is a thing that you can hold and touch. And the district court was clear about that. In APPX 20, the district court said that a lumen is, quote, the lumen component of the guide mechanism. The guide mechanism, you have a guide wire and it goes through a lumen, but the lumen is a component itself. You can hold it in your hand. At least right now, I don't think that this specifically, it may not matter for either of the two arguments this morning, but your view is that just the empty space inside the pump housing, and here I mean pump in the traditional sense, not the cannula that's stuck on the front of it, that that empty space is not just itself a lumen. It is not the lumen of the guide mechanism being discussed in the patent claims. And I don't mean to quibble, but technically, like the cannula itself has a lumen. It has an open space. But the cannula's lumen, that open space inside the cannula, that is not the guide mechanism lumen. The guide mechanism lumen is not an empty space. It is a device. But lumen refers to just a space. It's not a physical, tangible object, correct? What was the first noun? Lumen refers just to a pathway, a space. It's not a physical object. That is not correct in the context of the guide mechanism that has a lumen, because the guide wire goes into and through a lumen, and the parties at every level in the district court itself recognize that the lumen is a dedicated device. Like I mentioned, the district court called it a lumen component of the guide mechanism. Abby Ahmed talked about the lumen as, quote, it requires a lumen designed for a guide wire. And they say in APPX 1302, they reference a dedicated guide wire lumen. And there's other areas that it goes on where there's more instances of this. How much of what we've just been talking about do we have to decide here, as opposed to understand that there might yet be a to-be-decided issue on a remand, if you get one? Very little, if at all. And the reason is because the district court, in both of the claim terms at issue, was relying on a family member prosecution history, and those family members were not to be consulted, because those family members were dealing with different claim terms. And this court's law is very clear. In RescueNet, for example, this court said it is, quote, irrelevant when you have a claim term that is different in the family member. Does the doctrine disclaimer, though, require the claim limitations to be exactly identical? Is that what you're arguing, or what are you arguing? It does need to be, this court has repeatedly said, a common term, the same term. There's one case, advanced cardiovascular, where they were synonyms. But here we don't have anything of the sort. They're not even close. The term at issue, the first term, is guide mechanism comprising a lumen. You have a guide mechanism, and that thing has a lumen. It doesn't say anything about, in this claim, where that lumen is, distal to this, anywhere. The parent file history, the term at issue that the district court relied on was different. It said the entire elongate lumen was distal to the pump. That phrase, distal to the pump, it was changed to, say, distal to the pump's rotor. We talk about that's not even a disavow of any claim scope. That's a separate issue. But the point is that the claim term being addressed in that grandparent application dealt with a lumen distal to the pump. Here, in our claim, the claim just says a lumen. The guide wire has a lumen. The district court was not allowed to go take that file history that dealt with a different term, dealing with that placement of the lumen, and take that and suddenly say, oh, that now applies here. We were not, in the earlier file history, saying, by definition, when we say lumen, we mean it can't be distal to something. That earlier claim recited a specific placement of the lumen, but we didn't have to and we didn't here. And you can't use that earlier file history dealing with a different claim term here. What about the fact that there are overlapping claim terms? So I hear if you take the whole kind of phrase that you're taking, I can see the differences that you're identifying. But what if there's overlap in the two phrases in the two different file histories? Yes, Your Honor. It would make a difference if the subject of the amendment, if the pertinent events in that family member were dealing with the overlap. But here, the overlap is the word lumen, but the events in the family member prosecution history were not talking about the lumen. They were talking about the placement of it, distal to the pump, which was changed to say distal to the pump's rotor, which again, not even a substantive change. But there was no restriction on, we didn't say in the earlier prosecution history, to use an analogy, if the claim term was blue, and in the earlier prosecution history in the family member, we said, you know what, that does not include purple. Purple is a shade of blue. It does not include purple. And we come down later and now we're dealing with blue. Yeah, we don't get to say purple. But in that here, in that earlier prosecution history, the phrase at issue was distal to the intravascular blood pump, which was changed to say distal to the rotor, the pump's rotor. What about the other piece of prosecution history for the second claim term where, and you'll just correct me if I'm misremembering, I thought it was a point you made here in explaining, in arguing that there wasn't a disclaimer there or a forfeiture or something, to say there's a big difference between the lumen and the wire. The wire you can remove when you want to have the device that you've now got in place work. You can't remove the lumen. And if the lumen were between the rotors, then the rotors wouldn't spin. That's, I think it was with that in mind, that at least I was asking the question about whether lumen is just space. I see. Yes. Because space, that wouldn't be true, that the rotors just wouldn't spin. Correct. And the notion, and this is now we're talking about the second claim terms, the guide wire terms in Claims 1 and 24. The notion of a lumen in this context, the guide mechanism lumen, being just a space, the first time we've heard that is in their red brief. That's never been the subject of discussion. And as I said earlier in my argument, the district court and ABIOMET itself have talked about it being a dedicated lumen for this purpose. It is not a space. That is a newly created argument in the red brief. And the notion of the difference between a lumen, a physical lumen going between the rotor, the space between the rotor blades, and the guide wire is the lumen cannot, but would not go through the free space between the rotor blades. Because as we mentioned, the lumen itself stays in place. So if you put the lumen there, in between the free space between the blades that are trying to rotate, it won't, you know, the rotor won't work. The pump won't work. So you can't have that. And we agreed with that part of the construction. The lumen doesn't go through the free space. But the district court on the guide wire terms added the additional requirement from a great, great grandparent file history saying that the guide wire itself cannot go through that free space. We never said that. And there's no disclaimer of that notion. And the district court and Abiumad recognized that the specification says at least twice that you can remove the guide wire, which means even if it goes in the free space between the rotor blades, it doesn't matter because you're going to withdraw it. Once it's a guide, you put the guide wire in, then use that guide wire to put the pump system in. Once it's in place, you take the guide wire out. So it doesn't matter that the guide wire goes in between the space between the rotor blades because you're going to withdraw it. Then the pump can move freely. And the disclaimer, according to the district court on these terms, stemmed from that great, great grandparent application and a reference called Volcker. But that reference is a reference that we identified on an IDS and never said anything about. The examiner had allowed the application to issue. And we submitted an IDS with Volcker and some other references. Just said, you know, here are the references. No comment, no substantive remarks about them. And the examiner, on his own, issued a new notice of allowance and said these references don't cause any problems. He said, regarding Volcker, that it lacks several features of the claimed invention, including that it doesn't have the required awoment. Did McKay invoke Volcker in its response to the IPR petitions itself? In response, so on the IPR petitions, just first of all, that's not anything the district court relied on. But in the IPR petitions, Abiumed filed a whole series of IPR petitions, but not on this patent. But on four of the others, they asserted a ground of unpatentability based on a reference called Abelhausen. And they said in their petition, they said Abelhausen is similar to Volcker. And now here's what we told the patent office about Volcker. We said in our preliminary responses, oh, well, they're telling you that Volcker is like Abelhausen. Just so you know, dear PTAB, the examiner looked at Volcker and found that it was distinguishable. That's all we said. There wasn't anything more to it. We didn't get into discussions about anything. We said they said it's similar to the ground of unpatentability. You should be aware, dear PTAB, that the examiner looked at Volcker and distinguished it. There was no substantive discussion. And like I mentioned, the district court did not at all rely on the IPRs. Abiumed presented the IPRs. The district court's opinion relied solely on that great-great-grandparent and the statements made by the examiner regarding Volcker when he allowed the patent, and we never even commented. And this court has made clear that in Unwired Planet and many other cases that a disclaimer requires a disavowal of claims code that has to be clear and unmistakable. It requires words or expressions of manifest exclusion or restriction. And in Salazar, this court said, quote, an applicant's silence regarding statements made by the examiner during prosecution are not enough. This court said, quote, it cannot amount to a clear and unmistakable disavowal of claims code. Okay. You two are at rebuttal time. I'd like to reserve the rest. Thank you. Thank you. Counselor Hummel. Did I pronounce your name correct? Hummel, yes. Like the little figurines. Keith Hummel. Yeah, I thought of that. Well, they used to be valuable. They're no longer. You're going to do the arguments in English, right? Yeah. I'm going to have to do it in English because I don't know German. May it please the court, Keith Hummel for the IBM Ed Parties. The district court here properly construed and limited the claim terms at issue based not only on the Volcker statements and on the amendment that was done in prior proceedings before the PTAB and the PTO, but also based on the specification, which the district court was extremely familiar with. This court has repeatedly said that the limits of the claims can be limited based on the use of the word the present invention is. And this specification is filled with the words the present invention is. And, in fact, in Lumina, the court found that we have found disavowal or disclaimer, the words that McKay has been using constantly here, based on clear and unmistakable statements by the patent that limited the claim, such as the present invention includes or the present invention is or all embodiments of the present invention are. That is exactly what happened here. What is your best intrinsic support for the disclaimer here in your opinion? The intrinsic support is the constant statements in the patent about what the scope of the invention is here. Can you point to an example in a moment? Yeah, sure. Let me point you to column 8, lines 53 to 56. This is at the appendix 133. And it says here, as will be described below, the intervascular blood pump system of the present invention overcomes the drawbacks of the prior art by providing a guide mechanism as part of the intervascular blood pump. The present invention is also described as three different aspects, broad aspects. These are not embodiments. These are broad aspects. There's no attempt to limit anything to an embodiment here. The aspects are described in three different ways. One is a catheter docking system that doesn't use a guide wire. The other two use guide wires, which are an issue in the claims that we're construing here. The guide wire claims, sorry. Are you going to a different part of the patent as you're seeing your statements right now? And if so, what column and line are you headed to? Yeah, those parts there, which talks about the first aspect and the second aspect, you have to turn the page of the patent just a few pages, and you'll see that it says the over-the-wire aspect of it, the side rigor of rapid exchange, which are synonymous to each other, and those all start appearing on column nine and continue basically for the next several columns. There's also a summary which describes the three aspects of the present invention if you go back to column three starting on line four. All of these, the figures are described, the patent, the three aspects are described in great detail. None of them, none of them describe a guide mechanism that is distal to the cannula. And if you look at the way the progression is here, the cannula is at the far distal end, away from where the doctor is working on the patient. You have the cannula, you have the pump, and you have the catheter. It goes that way. There is nothing, not one peep of any indication, any teaching in the patent, that the guide mechanism can be distal to the cannula. That's what the examiner in the related application, the 238 application, when reading the specification himself, concluded there is no teaching. He told McKay, this is not enabled. Your claim that claims an entirely distal guide mechanism, entirely distal to the cannula, is not enabled. It's not enabled. They said with a boilerplate traversal, well, we disagree. Everybody does that. And then they disclaimed it. There's no response to opposing counsel's argument that you should not rely on the parent prosecution history because of differences in claim terms or claim phrases. Yeah. There's all of their cases, if you look at them. There are instances where the claim language may have been identical or not identical, and that was the issue. But this Court's precedents don't rely on identity of claim language. They also rely on identity of subject matter. And when you're talking about broad aspects of the claim, we're not talking about one claim against another claim here. We're talking about broad aspects of the invention. Does this invention teach a guide mechanism that's distal to the cannula? The subject matter before the examiner in the 238 patent and the subject matter before the examiner in the 783 patent were the same, the placement of the guide mechanism. That subject matter, according to the Wang case, is sufficient. It can be common subject matter. And then there, the common subject matter was really broad. And here, the common subject matter is broad. So I believe the focus on particular language is really a red herring here. What does the patent teach? What does the patent teach, one of skill and the art? Just taking the distal guide mechanism, what does the prosecution history teach the public, teach someone looking at this? The examiner said the intravascular blood pump includes the cannula. A guide mechanism distal to that structure, even if he was wrong, distal to that structure, distal to the cannula, is not enabled. McKay now says, oh, we had all these reasons why that was untrue. They put in these charts and say there's no surrender of claims scope. But none of that was put into the public record. They said none of that until this litigation. And when the public looks at this, they're going to say it's a disclaimer. Can I say this question, which doesn't have anything to do with the difference in the language between the claim now at issue and the language that was at issue in that. And there's an argument that the other side makes that there was no narrowing. And I guess I keep thinking about the following as a somewhat different argument for how there was no narrowing. The claim before narrowing, this is back in this enablement type prosecution history, said the guide mechanism or I guess the elongate lumen was sticking out the front of the cannula. And the amended claim said we're going to cover everything as long as it doesn't go, as long as it starts only at the pump. That includes everything that had been in the sticking out in front of the cannula. There's no narrowing. That's what I want to understand.   Because the rejection was you cannot have, first of all, I don't think you need narrowing. You just need change of claims scope. Okay. Well, that's a different thing. Okay. So that's one point number one. Point number two is there is narrowing. Because now what the examiner said is you cannot have a guide mechanism that is entirely distal to the cannula. So that starts at the end of the cannula and goes forward. And if you have to have it distal to the pump, then you are giving away certain scope there. At least I think so. And I think someone reading this would say, yeah, you can't have a guide. I'm free to actually make one of these devices that allows me to do what the examiner said you couldn't do, which is claim from the end of the cannula forward. So that's really the word entire is doing a rather lot of work in that. The word entire is doing a lot of work. Whatever else is not present here. I'm sorry. Whatever else is not present in the current language is the word entire. That's correct. There's nothing in the current language in the patent at all that allows something to be entirely distal. There's no more questions about that one. I'd like to move to the guide wire claims. Guide wire construction, if we affirm on that, then we don't have to reach the disclaimer construction, correct? That's correct. Because the guide wire claims are on both. I want to address the question that you first raised, Judge Taranto, and that is, I think it was that. A lumen is a space. It's not an actual structure. It's a space. It's not a tangible object. No. When you think of in cardiovascular cases, if you think of a blood vessel, the interior of the blood vessel is the lumen. That's where you see it the most. There's probably 100 stent cases that have been decided by this court that show that the lumen is the space. And, in fact, the proof of the pudding here is that the cannula is described in the patent as being there for the purpose of transporting blood. That's its purpose. In this picture here, this is Figure 3 at Appendix 95. Just to show you the picture, you've seen this picture. This is the pump. This is the over-the-wire aspect. So the over-the-wire aspect requires the guide wire lumen to go through. And this is the guide wire here. So here, this is the part of the cannula. It extends further on. The cannula has a big space, and the guide wire just goes through that space. That's part of the lumen. That's part of the central lumen that's formed throughout the structure when you have the over-the-wire aspect, which is the first aspect of this invention. The lumen is not a dedicated space. Now, I shouldn't say dedicated space because dedicated space has this loaded word to it. It is a dedicated space. It's a space. It's not a dedicated space that has a dedicated structure. If you were going to have a dedicated – if the lumen meant you have to have a dedicated structure, then there would have had to have been a separate tube in the cannula that allowed the guide wire to go through. And here's the proof of the pudding that that's not necessary, right here, Figure 3. So part of what I guess I've been troubled about is, in some sense, thinking about all of this certainly led me to start thinking about that question. I don't really understand that that's been the subject of a resolved dispute, whether claim construction or otherwise. It seems like that's an issue that has actually not been decided. That might be open for decision on remand, but that hasn't really been decided. So I guess I would respectfully disagree with that because the court, who obviously had been through two cases. You're getting the second case first on appeal, but he had a whole additional case. He considered in the first go-around whether the guide wire lumen can go through the rotor blades and concluded that they could not. And McCabe –  The lumen, right. Why couldn't the lumen go through it if it's just space? Because of the other aspects of the claims. The guide wire lumen in the over-the-wire aspect of this goes through the rotor hub. And if you look at Claim 24 here, it's the same picture I was showing you before. In Claim 24, one of the limitations is that the guide wire cannot go through the rotor hub. So we're not talking about the over-the-wire aspect of this. There's no teaching that the wire can go through the space between the rotor blades. The judge found that since the guide wire lumen, which he did not define as a separate structure, that the guide wire lumen could not go through. What I'm saying now is it follows through common sense that the guide wire cannot go through. Except, I mean, what the other side keeps saying is you can't remove the lumen. You can remove the guide wire. And it's perfectly fine to have the wire when you're installing it as long as you pull it out when you want to turn it on. The lumen is, again, the space. So there's no reason to remove the lumen. There's no teaching in the patent anywhere that says you can put a lumen and then remove the lumen. It's you can put the guide wire and remove the guide wire. And the proof that the guide wire cannot go through the rotor blades is really the prosecution history of the 728, where they endorsed the examiner's, I'm sorry, the IPRs that endorsed the examiner's interpretation of Volcker as being, teaching the prior art. Volcker has the guide wire that goes through the free space in the rotor blades. And what McKay did in defending against the IPRs successfully, against the institution of the IPRs, said the art that's in front of you is just like the art including Volcker, specifically named Volcker, that was before the examiner before. And he found that that was prior art, which was not invalidating. Right? It was not invalidating. So the fact that the rotor blade, that the wire went through the rotor blade, was not invalidating. And so, therefore, to interpret their patents to be valid, which we have to do during claim construction, we should interpret it so that the wire doesn't go through the rotor blades. And, again, I'll come back to, because there's 10 seconds on my clock, I'll come back to you will look in vain, in vain, for any teaching in this patent that shows that it can go through, that the wire can go through the rotor blades. Can a guide wire function without a lumen? The guide wire has to go through some lumen. So if there's no lumen, there's no guide wire. If there's no lumen, you cannot put the guide wire through it. But, again, the lumen is a space. I'm sorry? There's no space to put it through. There's no space to put it through. Right. So it has to be formed. The patent says you can form it as this central lumen, which goes through everything, or you can stick it on the outside of the cannula. And that's the side rigor. You're out of time. You want to conclude, or are you done? All I ask is that you affirm the judgment below. Thank you for your time. A few points. And I do want to talk about the file histories and the relation. Just a second. Three minutes. I'm going to restore you back to your time. Thank you, Your Honor. I appreciate that. On this notion about the lumen is the free space, it's trying to be kind with the words, but that is not a realistic explanation. It's the first time we've heard it for the first time in the red brief. It's very creative. It is not what anyone understood along the way. The examiner during prosecution. What's the issue in the parallel case, the so-called, the BioMed, is that how it's called? AbioMed. AbioMed, the case that is apparently on appeal here. What's the issue in that case? There are other claim construction issues involved, and I believe it's that, but it's not the same terms. It's not the same patent. Going back to this notion of whether the lumen is a free space or is a dedicated device, the examiner in the rejection, and Mr. Hummel tried to get around it, but he couldn't. Judge Toronto caught on to it. If the lumen is in between the free space between the rotor blades, the rotor can't turn. Unless it's just space. Right. The examiner here on APPX 174, and there are many instances of this, said the impeller would be impinged upon by guide wire lumen of the prior art when modified according to. The examiner knew it was a dedicated sleeve, if you will, for the guide wire to go into, because that's why the lumen cannot go between the free space between the rotor blades. The parties agreed with this. If the lumen is just open space, that makes no sense. It is a dedicated channel, a dedicated sleeve through which the guide wire goes. That's why you cannot have the lumen go between the free space, but you can have the guide wire. Can the interior surface of the cannula constitute a lumen? The interior surface of the cannula is, and the patent refers to this as the cannula lumen. That's because any tubular structure can have a lumen. A drinking straw has a lumen. Here, the claims are talking about a guide mechanism with a lumen for the guide wire to go through. That is also a physical device. This room is not a lumen in the context of the guide wire, the guide mechanism lumen. I know we're spending a lot of time talking about whether a lumen is a free space or it's a dedicated device. I really implore this court not to lose sight of the fact that all of this stemmed from two prosecution histories. One of them dealt with totally different claim terms that were restricting the placement of the lumen, not defining lumens. It was restricting whether the lumen, and by the way, if it's a free space, I don't even know what it means to be distal to something if it's just space. Mr. Hummel, my friend over here, said that this patent talks repeatedly about the present invention. He said there's no disclosure anywhere. Two things on that. One, the district court never addressed, and they never presented anything like that. Number two, here at column 14 on APPX 136, column 14, lines 14 to 15, it says the cannula is equipped with a guide mechanism 122. Equipped with, it can be anywhere on it. If you look at figure one of the patent, and this is on APPX 93, it shows sticking out the distal end of the cannula, it shows guide wire 22, and that number 16 pointing to that thing outside the cannula. That number 16, that's the guide mechanism, and it's pointing to it right there outside on the end. And this notion that he said you can search high and low and you'll never find any disclosure, the spec makes clear that the guide mechanism, which includes the lumen, can be equipped to the cannula. There it's used device is equipped to the cannula. It's equipped right there on the end. There was no basis for the district court to impart two restrictions that are found nowhere in these claims by relying on family members dealing with different claim terms. And we would ask this court to reverse. I appreciate the time. Thank you, counsel. Your Honor, I know it's unusual, but can I just make one point? And that is, if you, when you go look at figure one. Sir, I'm sorry, we're out of audio. If you want to communicate with the court, do it by letter or something, all right? I apologize. It's okay.